UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 50008 |
| vs. | ) | |
| | ) | Judge Iain D. Johnston |
| SCOTT KOTESKI | ) | |

### UNITED STATES' SENTENCING MEMORANDUM

For more than five years, defendant stole money from Association A, a non-profit business created to bring broadband technology to smaller municipalities in northern Illinois. While on the surface defendant's theft appears to be a small blip on an otherwise lawful life, such a view ignores the fact that day-to-day, month-to-month, and year-to-year, for more than five years, defendant knowingly took money not belonging to him. Such a view also ignores the fact that every month for more than five years (approximately 65 months), defendant took steps to conceal his wrongdoing while at the same time continuing his day-to-day stealing from Association A.

The probation officer determined defendant's advisory Guidelines range is 21 to 27 months' imprisonment.[1] The government recommends that this Court sentence defendant to 21 months' imprisonment.

### BACKGROUND

Defendant was an employee of the City of Rochelle. Starting in 2011, defendant was selected as the treasurer of Association A, a non-profit business created to bring broadband internet technology to smaller municipalities in northern Illinois. As the treasurer for Association A,

---

[1] The government has no objections to the factual findings, the offense level and criminal history calculations, or the proposed conditions of supervised release contained in the PSR.

1

defendant handled the invoicing and billing of the member municipalities. Between February 2012 and April 2018, defendant had signatory authority on Association A's bank account.

Starting in September 2012, defendant started writing checks to himself from Association A's bank account. On some of the checks, defendant wrote on the memo line of the check a statement such as, "final Wed. payment," "Lighting Camera," or "Invoice 1237852" to make it appear that the check was issued to defendant for repayment of monies defendant spent for Association A, when, in fact, the checks were not for repayment. Defendant deposited the checks in his personal bank account and used the money from Association A for his own benefit. Between September 5, 2012, and February 21, 2018, defendant wrote himself approximately 83 checks from Association A's bank account totaling $146,076.42. Defendant also wrote one check for $575 from Association A's bank account to an automobile dealer that defendant used as a down payment for the purchase of a new car for defendant.

Additionally, on February 15, 2018, defendant caused a $1,180.75 electronic payment from Association A's bank account to Online Company A, an online loan financing company, to pay the balance of defendant's Online Company A loan. Similarly, in March and April 2018, defendant caused three electronic payments totaling $2,500 from Association A's bank account to Credit Card Company A to pay for balances on defendant's personal Credit Card Company A credit card. Specifically, on March 2, 2018, April 19, 2018 and April 23, 2018, defendant caused electronic payments of $2,000, $300, and $200, respectively, from Association A's bank account located in Illinois to Credit Card Company A's online payment processing server located in Richmond, Virginia, to pay for balances on defendant's personal Credit Card Company A credit card. Ultimately, defendant's scheme resulted in a total loss of $150,332.17 to Association A.

**ARGUMENT**

Defendant's crime is very serious. Defendant stole money from Association A, a non-profit business created to bring broadband internet technology to smaller municipalities in northern Illinois. These smaller communities struggle to bring such technology to their communities as they do not have the leverage to establish better Internet service. Associations like Association A pull their resources together to increase their leverage thereby giving their residence access to better service. Defendant's theft impacted not only Rochelle, where he lives, but all the other communities who contributed monies to Association A.

While the Guidelines account for defendant's criminal history (or lack thereof) and the amount of money defendant stole, the Guidelines do not account for the length of defendant's scheme. Whether defendant took all the money on one day, or took the same amount over the course of more than five years, the Guidelines range is the same. The latter conduct, however, deserves a harsher sentence because, unlike a one-time error in judgment, defendant stole money from Association A day-to-day, month-to-month, and year-to-year. At any time over the course of more than five years defendant could have stopped, but defendant did not. It was only because the City of Rochelle investigated defendant for improperly using his city issued credit card and uncovered some of the checks written from Association A's account that defendant's scheme came to an end. In fact, there is no reason to believe defendant would have ever stopped if investigators did not happen to come across the checks.

That being said, the government has little reason to believe defendant will engage in similar conduct in the future. But this Court's sentencing determination should not stop at specific

deterrence. General deterrence, particularly with regard to white-collar type offenses, should weigh heavily in this Court's sentencing determination.

While a prison sentence may not deter a particular defendant, increasingly longer prison sentences do serve a general deterrent function by deterring others from committing a similar crime. *See* Daniel S. Nagin, *Deterrence in the Twenty–First Century,* 42 Crime & Justice 199, 231 (2013) (stating that increasingly longer prison sentences can have appreciable deterrent effects when defendants face a relatively shorter sentence to begin with); Mark W. Lipsey & Francis T. Cullen, *The Effectiveness of Correctional Rehabilitation: A Review of Systematic Reviews*, 3 Ann. Rev. L. & Soc. Sci. 297, 299 (2007)(observing that the existence of a criminal justice system that threatens wrongdoers with arrest and punishment deters many to refrain from crime, when they would likely break the law if there were no risk of detection and penalty). "White collar criminals seem like 'prime candidates for general deterrence' because they (presumably) act rationally, calculating and comparing the risks and rewards before deciding whether to engage in criminal activity." *United States v. Warner*, 792 F.3d 847, 860-61 (7th Cir. 2015); *see also United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994)("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Here, for more than five years, defendant engaged in criminal conduct not unfamiliar to the Western Division. *See United States v. Brown*, 880 F.3d 399, 406 (7th Cir. 2018)("In determining the importance of deterrence in crafting a sentence, the sentencing court must answer the situation from the perspective of the prospective offender. From that perspective, the

likelihood of getting caught depends not simply on the amount of resources that the Government expends on a particular type of crime, but the frequency with which the particular crime is committed and the ease with which it can be committed and go undetected."). In *United States v. Sally Classen*, 16 CR 50029, defendant Classen stole $440,369.83 from her employer and was sentenced to 24 months' imprisonment. In *United States v. Teresa Johnson*, 17 CR 50051, defendant Johnson stole more than $2.2 million from her employer and was sentenced to 41 months' imprisonment. In *United States v. Leilani Hillis*, 18 CR 50078, defendant Hillis stole $632,718.99 from her employer and was sentenced to 37 months' imprisonment. In *United States v. Michelle McKinney*, 18 CR 50030, defendant McKinney stole $475,775.84 from her employer and was sentenced to 15 months' imprisonment. A sentence below the Guidelines range will not sufficiently deter others from committing similar crimes.[2] Rather, such a sentence would arguably provide an incentive for others like defendant to place more weight on the benefit of the money versus the risk of a below-Guidelines sentence.

Moreover, a sentence below the advisory Guidelines range would produce an unwarranted disparity as "the Sentencing Guidelines are themselves an anti-disparity formula, and the Supreme Court stated in *Gall v. United States*, that to base a sentence on a properly determined Guidelines range is to give adequate consideration to the relation between the defendant's sentence and those of other persons[.]" *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017)(internal citation omitted). "District judges have discretion to sentence outside a Guidelines range, but . . .

---

2 There have been academic studies challenging the idea that a longer sentence deters others from committing similar crimes. *See United States v. Weathers*, 744 Fed. Appx. 947, 949 (7th Cir. 2018). First, the sentencing statue requires this Court to consider deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Second, the government is not seeking a "longer" sentence; rather, the government is seeking a sentence at the low-end of the Guidelines range.

. such a step comes at the expense of increased disparities; it is never compelled by § 3553(a)(6) in order to avoid unwarranted disparities." *Id*.

## CONCLUSION

For more than give years, defendant stole from Association A and covered his tracks. This Court should sentence defendant to 21 months' imprisonment—a term of imprisonment at the low-end the Guidelines range.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.,
        United States Attorney

By:    /s/ *Scott R. Paccagnini*
        SCOTT R. PACCAGNINI
        Assistant United States Attorney
        327 South Church Street - Room 3300
        Rockford, Illinois 61101
        (815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**UNITED STATES' SENTENCING MEMORANDUM**

was served on June 22, 2021, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ *Scott R. Paccagnini*
SCOTT R. PACCAGNINI
Assistant United States Attorney
327 South Church Street - Ste. 3300
Rockford, Illinois 61101
(815) 987-4444