UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 21 CR 50008 - 1 |
| | ) | Judge Iain D. Johnston |
| SCOTT KOTESKI | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**NOW COMES** Defendant, Scott Koteski, by and through counsel, Brendan W. Caver, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. Section 3553(a), states as follows:

**I.     PRE-SENTENCE INVESTIGATION REPORT**

Undersigned counsel has personally reviewed the Presentence Investigation Report (PSIR) with Mr. Koteski. The defense makes no requests to amend the PSIR.

**II.    PLEA AGREEMENT**

As the court is aware, Mr. Koteski has entered into a plea agreement. The court has accepted the agreement, and should sentence Mr. Koteski to a minimal term of incarceration.

**III.   SENTENCING CONSIDERATIONS**

As this court is well aware, the sentencing guideline range is no longer binding on the Court, but is only one factor to be considered in determining the sentence. *Booker*, 125 S. Ct. at 764-65. The 18 U.S.C. 3553(a) parsimony provision provides that court shall impose a sentence sufficient, but not greater than necessary, to carry out the proper purposes of sentencing. The purposes of sentencing include the need to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, to create adequate deterrence, to protect the public from future crimes of the defendant and to provide the defendant with necessary treatment and training. 18 U.S.C. 3553(a)(2), *Booker* 543 U.S. at 260. Other relevant section 3553(a) factors

include the nature and circumstances of the offense and the history and characteristics of the Defendant and the kinds of sentence available.

In *Gall v. United States*, 128 S. Ct. 586 (2007) the Supreme Court gave this Honorable Court direction and authority to consider mitigating factors that were discouraged or prohibited previously under the Guidelines. The court should consider the arguments of the parties as to the proper sentence in the particular case weighing the applicability of the §3553(a) factors. *Gall*, 128 S. Ct. 586. The court should evaluate each case on its own merits, considering every person convicted as his own individual and each case as a unique study the human condition that sometimes mitigate (and sometimes magnify) the crime and consequent punishment. *Id.* at 598. The court must then delineate its reasons for the record. *Id.* The court's reasons for deviation from the guideline range should be rooted either in the nature and circumstances of the offense or the characteristics of the offender, and should be sufficient--but not greater than necessary--to comply with the aims of §3553(a). This decision allows the sentencing court to apply the facts of the case with the circumstances of the Defendant's life and fashion a sentence that comports more with justice than with mere arithmetic calculations.

    A.    **The Kinds of Sentences Available**

This honorable Court has discretion to sentence the Defendant to a minimal sentence of incarceration, even below the guideline range. For the reasons discussed below, the defendant respectfully prays that such a sentence should be imposed.

In *U.S. v. Jones*, 460 F.3d 191 (2nd Cir. 2006) the district court properly imposed a non-guideline sentence of 15 months when he considered his own sense of was fair and just where the defendant was convicted of being a felon in possession of a firearm and possession of firearm. As the court stated: "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that

consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness." *Id.*

    C.    **Sentence Recommendation**

As discussed above, *Booker* and 18 U.S.C. §3553(a) factors indicate that no matter what is recommended under the sentencing guidelines: the sentence must be sufficient, but not greater than necessary to achieve the purposes of punishment. Here, it is respectfully submitted that a minimal sentence of incarceration followed by an appropriate period of supervised release is sufficient to achieve the goals of punishment. Justice would be served by such a proposed sentence.

Defendant recognizes that the seriousness of his offense and the resulting harm warrants imprisonment; he acknowledges this and this is objectively realistic. Likewise, the proposed sentence achieves the goals of deterrence, incapacitation, and rehabilitation. Defendant does not pose a high risk to recidivate, having no criminal history. General deterrence is well-served by a minimal sentence of incarceration and the resulting restrictions on the Defendant's freedom. Finally, Defendant's need for rehabilitation, treatment and training can be met by a minimal sentence of incarceration. The defendant has plead guilty, cooperated with the government, and has thereby demonstrated respect for the law. Mr. Koteski is genuinely remorseful for his conduct and has acknowledged the harm he has caused to the community. To the extent that restitution will be paid, a term of incarceration makes it more difficult for the Defendant to be gainfully employed for the remainder of his working years.

In determining the minimally sufficient sentence, the Court must essentially ask whether a more severe sentence would achieve greater justice, deterrence, incapacitation, or

rehabilitation. Respectfully, it would not in this case. The Court has great discretion in sentencing post-*Booker*. In this case the Court can, for reasons expressed in this memorandum, assure that the sentencing process was a reasoned one and sentence the Defendant to a term of minimal sentence of incarceration. *See United States v. Carter*, 538 F.3d 784 (7th Cir 2008).

Mr. Koteski respectfully requests this Honorable Court sentence him to minimal sentence of incarceration, along with any specific conditions this Court deems appropriate as any such sentence will be significant for Mr. Koteski.

                                                Respectfully Submitted,
By:   /s/ *Brendan W. Caver*
           on behalf of Defendant

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that he served the above and foregoing document upon all parties entitled to notice thereof by use of this Court's Electronic Case Management system on the 27th day of June, 2021.

                                                /s/ *Brendan W. Caver*
                                                Brendan W. Caver

*Brendan W. Caver*
Law Office of Brendan W. Caver, Ltd.
308 West State Street #321
Rockford, Illinois 61101
(815) 714-9508
Brendan@CaverLawOffice.com

To Whom It May Concern,

I know Scott Koteski because his wife is my best friend, and I also consider him a friend. We spend a lot of time together with our families or doing things as couples with him and his wife and me and my husband. We met when our daughters were in preschool together, and we also went to church together for a few years. I have known Scott now for about fifteen years.

In all the years I've known Scott, I've only ever known him to be a man committed to his family. He has always worked hard to provide for his wife and children. He's always had a full time job and has worked extra side jobs. He's always been a good father, husband, and just all around good man.

Scott has always been the type of person that you could come to if you needed help. Just the other day my husband was out of town for work, and I ran into a huge issue with a home repair. We had people coming to put in flooring, and we had bought the wrong kind. Scott spent his entire day driving me to the store to return all of the boxes of heavy flooring and get the correct kind. It was no easy job, but not once did he complain, and he wouldn't accept any payment. That's just the kind of man Scott is.

A couple of weeks ago Scott and his wife were over for dinner. I had mentioned that I was looking for a small table to set by my chair on my deck. Scott soon built me one that was perfect, and once again he wouldn't take any payment.

Thank you for taking the time to read my letter.

Sincerely,
Melissa Hammonds

June 14, 2021

To Whom It May Concern:

Re: Scott Koteski

I, Michael E Christy have known Scott Koteski for over 3 years

Scott without hesitation stepped up & helped me with some home improvements at my dads house who passed away. His talents helped me sell my dads house immediately. Scott always is willing to help other people with his open heart without wanting anything in return

He stands strong in his faith & is a man of God who made a mistake This mistake has changed his life forever & will never happen again.

Thank you for considering my reference letter before Scott's sentencing

The punishment that Scott has put on himself is alot worse that any punishment that the judicial system could be put on him.

Scott is coping with this mistake every day. He is going to counseling which has helped him greatly.

Thank you for considering my reference letter before sentencing Scott.

Michael E. Christy
542 Montezuma Rd
Benton Harbor, MI - 49022 -
(269) 605-9773

June 13, 2021

To Whom It May Concern:

Re: Scott Koleski

I, Cathy Trzil have known Scott Koleski for over 37 years.

Scott is a man of God & a man of his word.

Scott is a hard working man who puts his family first. He would help you in any way he can. He always thinks & does for other people before doing for himself.

Scott is not a hard core criminal but a man who made a mistake.

-2-

Re: Scott Kotarski

We all fall short every day. Scott has learned a valuable lesson in his life & will not ever commit any crime of any kind in his future. Please give Scott a chance to prove himself as a man who has changed.

Thank you for taking my letter of reference into consideration upon Scott's sentencing.

Cathy Udell
542 Montezuma Rd.
Benton Harbor, MI - 49022-7116
(269) 252-7535
email: cthymdu@yahoo.com

June 3, 2021

RE: Character Reference for Scott Koteski

To whom it may concern,

My name is Michael Erickson, and my family served as missionaries to the Philippines from 2006 to March of 2020. Shortly after returning to the Rochelle, IL, we began a men's small group that met weekly on zoom. Although I knew of Scott and his wife, Sherry, I have really gotten to know Scott personally over the last year. We are currently on our 3rd series by Ed Cole, with each book series lasting around 3 months.

At first, I found Scott to be reserved, but always faithful in showing up for our weekly meetings on time. By his own admission he is not a morning person, and we would usually give him a hard time every week as he seemingly just poured his first cup of coffee before appearing on the zoom video call. Over the past year, I have noted his openness to share about past experiences, current situations, and how he is constantly working to make good choices and be there for his family and loved ones. I have seen as he often stays busy, working on several different projects and jobs at the same time. I have listened as he assimilates the information from the material we go through, and thoughtfully applies it to his own life and relationships.

Over this past year we have been able to expand our gatherings to sometimes be in person, over breakfast, or I would see him as he attended a different course (such as handling finances God's way). I didn't know Scott well before this past year, and I really can't speak to his life before that time. I can, however, say that as the leader of our weekly men's small group, I have seen him grow this past year. I have seen his commitment to not only get the material done, but to also ask thoughtful questions, give meaningful insight, and apply its principles to his daily life as best he can. I hope, pray, and believe he will remain steady on the course he is currently on. Personally, I hope he is shown grace in this legal situation. I can't speak to his character prior to 2020, but I can say he has grown in many ways this past year, and I believe his intentions to be genuine.

Michael Erickson, Pastor CFC
mike@cornerstonefoursquare.org

*Larry and Sharon Davis*
*934 N. 10th Street*
*Rochelle, IL 61068*
*larrydavis120@comcast.net*
**815-7571456**

July 3, 2021

TO WHOM IT MAY CONCERN

Re: Scott Koteski – Character Reference

I have known Scott through his wife Sherry for several years, and then later the past 2 years he has been in the Men's Bible study that I facilitated. He and Sherry also attended a financial study of Handling Money God's Way which I facilitated.

In the years I have known Scott he has always been helpful to us when we had computer problems or help in renovations in our basement. He has been a good friend and neighbor. In the beginning in our Bible study, he was quiet, but attentive. Later, He began sharing his own testimony of how Jesus Christ is changing his thoughts and life, how he is spending more time studying God's Word, and continuing in prayer. He studies the lessons beforehand, always having the workbook done, and applies the lessons to his own life, which is the goal of the study. He has admitted his wrong-doing to the group, showing that he genuinely wants to redeem himself and start a new way of life.

I know Scott is a hard and conscientious worker in all he does. When his own job allows, he is always helping Sherry with her business.

I cannot testify to anything prior to my knowing Scott, but in the past 2 years I can see a growth in him and changes in him that I know will be permanent because they aren't just based on feelings or guilt, but a genuine passion to become a better man for himself, his wife, and his community around him, and especially to glorify God.

My wife and I are both praying for leniency in his court case because we believe the justice system is not only for restitution and punishment but also, in part, to rehabilitate and restore, and in that part, Scott is well on his way to that, and in our opinion it is genuine.

Although we now do Bible studies from our home and in our church, we have been in prison ministry at the Dixon Correctional Center for 20 years and facilitated Bible studies and Financial studies there twice a week. I believe in that time we have attained a good sense of behavior and character; what is genuine and just for show. That is why I believe Scott is the real thing. He has been consistent in his actions and growth for the whole 2 years.

Sincerely,

Larry O. Davis
Bible study Leader and layman counselor

June 3, 2021

To Whom it May Concern

I write this letter in support of Mr. Scott Koteski. I have known Scott since he was a teenager, and was dating a member of my congregation, Redeemer Lutheran Church in Rockford, Illinois. In fact, Scott became a member of our congregation as a young adult, and I both confirmed him in his Christian faith and later performed his marriage to his wife, Sherry (Hoffman) Koteski.

When he and his wife moved out of Rockford, we lost touch, and from what he has said, he drifted away from his earlier faith, never really found another spiritual home, and now finds himself regretting that "drift" and his responsibility for the trouble in which he finds himself by his own choices.

When I spoke to him recently about his circumstances, he took responsibility for his actions, and confessed that while he had drifted away from the church, he was still trusting his Lord and Savior to help him through these difficulties. He also expressed deep regret for having made these bad choices, and I feel he has already learned a lot from all this.

I believe that, given the opportunity to start "a new life" with his faith and his Christian values renewed, he has already turned his back on the bad choices he made, and is determined to start anew, if only given the opportunity.

I trust that you will take this into account as the time for sentencing has come. I would encourage you to question him about these things yourself. I believe you will find what I have found in talking to him and examining his present attitude.

Thank you for your consideration as you consider what is the "proper" sentence for Scott.

Sincerely,

Rev. Robert H. Rub, Jr.
Retired



DiMAX Office Solutions, Inc

201 Sunnyside Dr.
Milton, WI 53563

Tel: 608-442-1100
Fax: 608-563-4700

Dear Sir or Madam,

    I am writing in reference to Scott Koteski's case. I have known Scott for 3 years, and we are co-workers. I believe I'm in a position to speak to Scott's moral character and work ethic, so I hope you will take this letter into account when making your decision.

    Scott is, in short, a good person and a valuable employee at our workplace. He has always been kind and generous with others. He has a strong sense of duty, which applies in his job. He also possesses a great deal of integrity, and constantly strives to make sure he is doing the right thing for other co-workers and customers. He is always eager to assist customers even after hours if necessary.

    It must be difficult for you to make decisions like this when you do not personally know the man standing in front of you, so I hope you will take my letter into consideration and understand that Scott is the kind of person around whom people rally. I appreciate your time reading this and ask that you allow this letter to be a factor in your decision.

Thank you,

*Aaron Falk*

Aaron Falk

President

DiMAXUSA.COM      Document | Networking | VoIP